JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

WENDY THOMAS (NYBN 4315420)
Special Assistant United States Attorney

 450 Golden Gate Avenue, Box 36055
 San Francisco, California 94102-3495
 Telephone: (415) 436-6809
 FAX: (415) 436-7234
 E-mail: wendy.thomas@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-0721 EDL |
| Plaintiff, | ) ) | UNITED STATES' PROPOSED |
| v. | ) ) | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| ANDREW MAKER, | ) ) | |
| Defendant. | ) ) | |

The United States respectfully submits the following proposed findings of fact and conclusions of law.  The United States reserves the right to amend, supplement, or modify these proposed findings and conclusions.

### FINDINGS OF FACT

1. Fort Mason is located in the Northern District of California.  *See* Transcript of Proceedings, United States v. Andrew Maker, June 18, 2008 ("Trans.") at 23:9.

2. Fort Mason is in the Golden Gate National Recreation Area and is administered by the National Park Service. *Id.* at 23:6-7.

3. The San Francisco Blues Festival ("Festival")  took place at Fort Mason on September

30, 2007. *Id.* at 22:24-23:5.

4. Conniesue Redman ("Redman") was working as a security guard at a disabled access entrance gate for the Festival on September 30, 2007. *Id.* at 3:12-20.

5. On September 30, 2007, Defendant Andrew Maker ("Defendant") attempted to gain access to the Festival through the disabled access gate where Redman was working. *Id.* at 3:22-4:3.

6. Redman advised Defendant that the main entrance to the Festival was on the other side of the park. Defendant claimed to be disabled, and Redman asked for verification. *Id.* at 3:25-4:9; 16:3-20.

7. Defendant did not provide verification that he was disabled. *Id.* at 16:19.

8. Defendant became increasingly irate while "ranting and mouthing off." *Id.* at 6:13; 32:7-21.

9. Redman asked for Defendant's ticket, which Defendant handed her through the gate. *Id.* at 4:14-15.

10. After handing Redman his ticket through the gate, Defendant stated "Your [sic] over doing your job, bitch" and slammed his hand into the gate, which struck Redman in the chest. *Id.* at 4:18-20.

11. Unable to verify whether Defendant was entitled to enter the event through the disabled access gate and apprehensive about Defendant's increasingly agitated disposition, Redman returned Defendant's ticket and told him to enter through the main entrance gate. *Id.* at 4:21-24; 6:16-19.

12. Defendant walked away from the gate, but after walking away turned around and quickly walked back towards the gate. *Id.* at 4:25-5:3.

13. Defendant then shoved the gate with both hands towards Redman, who he had seen to be standing in close proximity to the gate, which struck her squarely in the chest. *Id.* at 5:3-4.

14. The second time Defendant shoved the gate at Redman, the gate not only made offensive contact with Redman's person, but also opened wide enough for Defendant to get

through. This caused Redman, posted alone at the disabled access gate, to be "concerned" that Defendant could enter the gate and come after her. *Id.* at 8:10-16.

15. After shoving the gate the second time, Defendant walked up to the chain link fence separating himself from Redman, and spat in Redman's face. The spit hit Redman in her glasses and ran down her face. *Id.* at 5:4-5; 13:24-14:1.

16. Defendant then called Redman a "Ho" (slang for "Whore") and walked away. *Id.* at 5:5.

17. Redman radioed her supervisor and described the incident to him. The supervisor radioed Lloyd Brown ("Brown"), another security guard on duty, and relayed the information to him. *Id.* at 5:8-17; 18:13-18.

18. United States Park Police Officer Neil Wu ("Officer Wu") was working at the Festival on September 30, 2007. *Id.* at 22:24-23:5.

19. At approximately 2:22 p.m., Brown asked Officer Wu to detain an individual who had assaulted a security guard. Brown pointed out an older African American male, wearing a black coat, blue jeans, and white tennis shoes. The individual was later identified as the Defendant. *Id.* at 18:23-19:4; 23:14-20; 25:1-4.

20. Defendant was walking towards Officer Wu and Brown in the rear of Building #101 in Upper Fort Mason. Upon contact, Defendant was uncooperative and visibly agitated, uttering obscenities, cursing, and accusing Officer Wu of racism. *Id.* at 19:25-20:8; 24:19-25.

21. According to Brown, Officer Wu's demeanor throughout the questioning of Defendant was "very calm." *Id.* at 20:12.

22. Brown requested that Redman respond to the scene. Upon her arrival, Redman positively identified the male subject as the person who assaulted her. *Id.* at 25:1-4.

23. After questioning, Defendant accused Officer Wu of "taking the white bitch's word." Officer Wu took this as an indication that an altercation had taken place. *Id.* at 25:9-12.

24. After questioning Redman, Defendant, and Brown, and after Redman identified and expressed her desire to pursue charges against Defendant, Officer Wu placed Defendant

//

1   under arrest for violation of 18 U.S.C. § 113(a)(5), simple assault, a Class B

2   Misdemeanor. *Id.* at 25:5-6.

## II. CONCLUSIONS OF LAW

4   1.  Title 18 of the United States Code, Section 113(a)(5) provides that "Whoever, within the

5   special maritime and territorial jurisdiction of the United States, is guilty of an assault

6   shall be punished as follows . . . (5) Simple assault, by a fine under this title or

7   imprisonment for not more than six months, or both, or if the victim of the assault is an

8   individual who has not attained the age of 16 years, by fine under this title or

9   imprisonment for not more than 1 year, or both." 18 U.S.C. § 113(a)(5).

10  2.  Because 18 U.S.C. § 113(a)(5) does not define assault, the Ninth Circuit has adopted the

11  common law definitions, including (1) "a willful attempt to inflict injury upon the person

12  of another," also known as "an attempt to commit a battery" or (2) "a threat to inflict

13  injury upon the person of another which, when coupled with an apparent present ability,

14  causes a reasonable apprehension of immediate bodily harm." *United States v. Dupree*,

15  544 F.2d 1050, 1051 (9th Cir. 1976).

16  3.  The Ninth Circuit's first definition of assault includes a *mens rea* requirement,

17  specifically that the attempt to inflict injury upon the person of another be "willful."

18  *Dupree*, 544 F.2d at 1051.

19  4.  Under Ninth Circuit precedent, "[t]he *mens rea* requirement is that the volitional act be

20  willful or intentional; an intent to cause injury is not required." *United States v.*

21  *Lewellyn*, 481 F.3d 695, 697 (9th Cir. 2007).

22  5.  Similarly, a "showing of fear" on the part of the victim is also not required to prove

23  assault under the Ninth Circuit's first (or "attempted battery") definition. *Id.*

24  6.  In the case at hand, Defendant's conduct meets the Ninth Circuit's "attempted battery"

25  definition of assault under *Dupree*.

26  7.  Defendant was visibly irate and agitated, moreover, he manifested his irateness and

27  agitation by way of threatening physical actions directed at Redman. In addition to

28  raising his voice and screaming obscenities at Redman, Defendant pushed the metal gate

towards Redman on two separate occasions, both times making offensive contact with Redman's person.

8. The shoving of the gate against Redman's person constitutes a "willful attempt to inflict injury upon the person of another." *Dupree*, 544 F.2d at 1051. The Defendant's state of mind during the incident is characterized by anger, which was chiefly directed at Redman. Defendant's anger, moreover, was manifested by his shoving the gate at Redman. Coupled with knowledge that Redman was standing close enough to the gate to be struck by it, Defendant's act of shoving the gate evinces a willingness on the part of the Defendant to strike Redman with the gate.

9. Even if Defendant acted without the requisite *mens rea* when shoving the gate at Redman the first time, the second time he shoved the gate he acted with knowledge that the gate would hit Redman. Such knowledge, coupled with the Defendant's volitional act of rapidly moving back towards Redman after initially turning away, and his disregard of the likelihood of striking Redman's person when shoving the gate for the second time, demonstrates a wilfulness to make offensive contact with Redman's person with the gate.

10. The Ninth Circuit's second definition of assault, by contrast, does not explicitly include a *mens rea* requirement, but rather focuses on the victim's perception of the threat. To constitute assault under this second definition, the defendant's conduct must cause a "reasonable apprehension of imminent bodily harm" on the part of the victim. *Dupree*, 544 F.2d at 1051.

11. In the case at hand, even if Defendant lacked the requisite *mens rea* to meet the Ninth Circuit's "attempted battery" definition of simple assault, Defendant's actions nevertheless satisfy the second definition of assault announced in *Dupree*.

12. Defendant's menacing language directed at Redman, coupled with Defendant's "apparent physical ability" as manifested by his ability to shove the gate so as to inflict pain on Redman, caused Redman a "reasonable apprehension of immediate bodily harm." *Dupree*, 544 F.2d at 1051.

13. Defendant's action of shoving the gate at Redman the second time, furthermore, caused

the gate to be open wide enough for Defendant to enter through it and pursue Redman. Stationed alone at the disabled access gate, Redman was "concerned" that Defendant enter the gate and "come after" her.  Trans. at 8:10-14.

14. Given the menacing nature of Defendant's language, the threatening nature of his physical actions, and the fact that Defendant shoved the gate open wide enough so that he could fit through it, Redman was apprehensive of imminent bodily harm, and her apprehensiveness was "reasonable" under the circumstances.

15. The Ninth Circuit has repeatedly reaffirmed the definitions of "assault" promulgated in *Dupree*.  *See, e.g.*, *United States v. Skeet*, 665 F.2d 983, 986 (9th Cir. 1982); *United States v. Juvenile Male*, 930 F.2d 727, 728 (9th Cir. 1991).

16. The issue of how to define "simple assault" in the context of a defendant spitting on a victim was directly addressed by the Ninth Circuit in *United States v. Lewellyn*, 481 F.3d 695 (9th Cir. 2007).

17. In *Lewellyn*, the defendant was charged with simple assault under 18 U.S.C. § 113(a)(5), the same statute charged in this case.

18. The defendant in *Lewellyn* spat in the victim's face during a fight.  There, the U.S. Magistrate Judge convicted the defendant of simple assault after a two-day bench trial and the defendant appealed.

19. The Ninth Circuit affirmed the U.S. Magistrate Judge's ruling, holding that "noninjurious but intentional, offensive contact (even if relatively minor) satisfies the requirement for simple assault . . . intentionally spitting on another person is an offensive touching that rises to the level of simple assault under the theory of assault as an attempted or completed battery."  *Id.* at 698, 699.

20. In order for the volitional act of spitting on a victim to constitute simple assault, it is not required that the defendant intend to cause injury.  *Id.* at 697.

21. A "showing of fear" on the part of the victim is also not required for a finding of simple assault.  *Id.*

22. Under *Lewellyn*, then, the intentional or willful volitional act of spitting on a victim

1    constitutes simple assault.

2    23. In the case at hand, Defendant's act of spitting in Redman's face constitutes simple

3    assault under *Lewellyn*.  Defendant's act in this case is precisely the same as the conduct

4    in question in *Lewellyn*: "intentional, offensive contact," which although noninjurious

5    and relatively minor, nevertheless satisfies the requirements for simple assault.

6

7    DATED: July 11, 2008                          Respectfully submitted,

8

9                                                 JOSEPH P. RUSSONIELLO
                                                  United States Attorney
10

11                                               _____
                                                            /s/
12                                               WENDY THOMAS
                                                 Special Assistant United States Attorney
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28