United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>ANDREW MAKER,<br><br>    Defendant.<br>_____ / | No. CR 07-0721 EDL<br><br>**FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW** |

The government charged Defendant, Andrew Maker, with simple assault under 18 U.S.C. § 113(a)(5) by information on November 15, 2007. The bench trial in this case took place on June 18, 2008. Following the trial, the parties submitted proposed findings of fact and conclusions of law and Mr. Maker moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.

After an examination of the record in this case, including the testimony admitted at trial, and after consideration of the parties' arguments in conjunction with Mr. Maker's Rule 29 motion, the Court hereby adjudges Maker guilty of simple assault. The following memorandum decision sets forth the factual and legal basis for the court's findings, pursuant to Fed. R. Crim. P 23(c), and with respect to Maker's Rule 29 motion.

**FINDINGS OF FACTS**

Based on the evidence presented at trial, the Court makes the following factual findings.

1. Fort Mason is located in the Northern District of California. See Transcript of Proceedings, United States v. Andrew Maker, June 18, 2008 ("Trans.") at 23:9.

2. Fort Mason is in the Golden Gate National Recreation Area. Id. at 23:6-7.

3. The San Francisco Blues Festival ("Festival") took place at Fort Mason on September 30,

1  2007. Id. at 18:5-6; 22:24-23:5; 23:4-5.

2  4.  Conniesue Redman was working as a security guard at a disabled access entrance gate for

3  the Festival at Fort Mason on September 30, 2007. Id. at 3:12-20.

4  5.  On September 30, 2007, Defendant Andrew Maker attempted to gain access to the

5  Festival through the disabled access gate where Redman was working. Id. at 3:22-4:3.

6  6.  Ms. Redman advised Mr. Maker that the main entrance to the Festival was on the other

7  side of the park. Mr. Maker claimed to be disabled, and Ms. Redman asked for verification.

8  Id. at 3:25-4:9; 16:3-20.

9  7.  Mr. Maker did not provide verification that he was disabled. Id. at 16:19.

10 8.  Ms. Redman asked for Mr. Maker's ticket, which Mr. Maker handed her through the gate.

11 Id. at 4:14-15.

12 9.  After handing Ms. Redman his ticket through the gate, Mr. Maker stated "You're over

13 doing your job, bitch" and slammed his hand into the gate, which struck Redman in the

14 chest. Id. at 4:18-20.

15 10. Not wanting to put up with Mr. Maker's attitude or behavior, Ms. Redman returned Mr.

16 Maker's ticket and told him to go around to another entrance. Id. at 4:21-24; 6:16-19.

17 11. Mr. Maker walked away from the gate, but after walking away turned around and

18 walked back towards the gate. Id. at 4:25-5:3.

19 12. Mr. Maker then shoved the gate with both hands towards Ms. Redman again and it

20 struck her squarely in the chest. Id. at 5:3-4.

21 13. The second time Mr. Maker shoved the gate at Ms. Redman, the gate not only made

22 offensive contact with her person, but also opened wide enough that Ms. Redman thought

23 Mr. Maker could get through. This caused Ms. Redman, posted alone at the disabled access

24 gate, to be somewhat concerned that Mr. Maker could enter the gate and come after her. Id.

25 at 8:10-16. It hurt Ms. Redman when Mr. Maker pushed the gate into her chest. Id. at 7:21-

26 23.

27 14. When Mr. Maker shoved the gate a second time he also spat in Ms. Redman's face

28 through the chain link fence. The spit hit Redman in her glasses and ran down her face. Id.

at 5:4-5; 13:24-14:1.

15. Mr. Maker then called Ms. Redman a "Ho" (slang for "Whore") and walked away. Id. at 5:5.

16. Ms. Redman radioed her supervisor and described the incident to him. The supervisor radioed Lloyd Brown, another security guard on duty, and relayed the information to him. Id. at 5:8-17; 18:13-18.

17. United States Park Police Officer Neil Wu was working at the Festival on September 30, 2007. Id. at 22:24-23:5.

18. At approximately 2:20 p.m., Brown asked Officer Wu to detain an individual who had allegedly assaulted a security guard. Brown pointed out man who resembled Ms. Redman's description of her assailant. The individual was later identified as the Mr. Maker. Id. at 18:23-19:4; 23:14-20; 25:1-4.

19. Mr. Maker was walking towards Officer Wu and Brown at the back stage entrance of the festival. Upon contact, Mr. Maker protested being stopped and kept cursing and became increasingly agitated and loud while being questioned, saying to the officer "Why the hell are you stopping me? Is it because I'm Black?" Id. at 19:25-20:18; 24:19-25.

20. According to Brown, Officer Wu's demeanor throughout the questioning of Mr. Maker was "very calm." Id. at 20:12.

21. Brown requested that Ms. Redman respond to the scene to identify the suspect. Upon her arrival, she positively identified the male subject as the person who assaulted her. Id. at 24:14-15; 25:1-4.

22. After questioning, Mr. Maker accused Officer Wu of "taking the white bitch's word." Officer Wu took this as an indication that an altercation had taken place. Id. at 25:9-12.

23. Officer Wu placed Mr. Maker under arrest on September 30, 2007. Id. at 25:5-6.

## CONCLUSIONS OF LAW

Title 18 of the United States Code, Section 113(a)(5) provides that "[w]hoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows . . . (5) Simple assault, by a fine under this title or imprisonment for not more

3

1  than six months, or both, or if the victim of the assault is an individual who has not attained the age
2  of 16 years, by fine under this title or imprisonment for not more than 1 year, or both." 18 U.S.C. §
3  113(a)(5). Because 18 U.S.C. § 113(a)(5) does not define assault, the Ninth Circuit has adopted the
4  common law definitions, including (1) "a willful attempt to inflict injury upon the person of
5  another," also known as "an attempt to commit a battery" or (2) "a threat to inflict injury upon the
6  person of another which, when coupled with an apparent present ability, causes a reasonable
7  apprehension of immediate bodily harm." United States v. Dupree, 544 F.2d 1050, 1051 (9th Cir.
8  1976).

9        The Ninth Circuit's first definition of assault includes a *mens rea* requirement that the
10  attempt to inflict injury upon the person of another be "willful." Dupree, 544 F.2d at 1051. Under
11  Ninth Circuit precedent, "[t]he *mens rea* requirement is that the volitional act be willful or
12  intentional; an intent to cause injury is not required." United States v. Lewellyn, 481 F.3d 695, 697
13  (9th Cir. 2007). Similarly, a "showing of fear" on the part of the victim is also not required to prove
14  assault under the Ninth Circuit's first (or "attempted battery") definition. Id.

15        The Ninth Circuit has repeatedly reaffirmed the definitions of "assault" set forth in Dupree.
16  See, e.g., United States v. Skeet, 665 F.2d 983, 986 (9th Cir. 1982); United States v. Juvenile Male,
17  930 F.2d 727, 728 (9th Cir. 1991). The Ninth Circuit directly addressed the issue of how to define
18  "simple assault" in the context of a defendant spitting on a victim in United States v. Lewellyn, 481
19  F.3d 695 (9th Cir. 2007). In Lewellyn, the defendant was charged with simple assault under 18
20  U.S.C. § 113(a)(5), the same statute charged in this case. The Ninth Circuit affirmed the lower
21  court's ruling, holding that "noninjurious but intentional, offensive contact (even if relatively minor)
22  satisfies the requirement for simple assault . . . intentionally spitting on another person is an
23  offensive touching that rises to the level of simple assault under the theory of assault as an attempted
24  or completed battery." Id. at 698, 699.

25        Applying the facts here to the first definition of assault, Mr. Maker's acts of spitting and
26  shoving the gate at Ms. Redman were willful, especially given the hostile language directed at her.
27  In addition, the gate and spit made offensive contact with Redman's person. Since Ms. Redman was
28  standing close enough to the gate to be struck by it if pushed, Mr. Maker's act of shoving the gate

evinces a willingness on the part of the Mr. Maker to strike Redman with the gate. Even if Mr. Maker acted without the requisite *mens rea* when shoving the gate at Redman the first time, since it struck her, he had substantial certainty that shoving it a second time could result in offensive contact with her person. Such knowledge, coupled with the Mr. Maker's volitional act of returning and initiating further contact with Ms. Redman after turning away to leave, demonstrates a wilfulness to make offensive contact with her person when he shoved the gate a second time. Therefore, spitting and shoving the gate constituted volitional acts. Since the acts were volitional, Mr. Maker committed acts within the scope of assault. Based on all the evidence, the government proved the elements in the first definition of assault beyond a reasonable doubt.

The Ninth Circuit's second definition of assault, by contrast, does not explicitly include a *mens rea* requirement, but rather focuses on the victim's perception of the threat. To constitute assault under this second definition, the defendant's conduct must cause a "reasonable apprehension of imminent bodily harm" on the part of the victim. Dupree, 544 F.2d at 1051. Here, Mr. Maker's hostile language directed at Ms. Redman, coupled with Mr. Maker's "apparent physical ability" as manifested by his ability to shove the gate so as to hit Ms. Redman squarely in the chest, and his return after shoving the gate the first time caused Ms. Redman to become concerned that Mr. Maker could enter through the gate and pursue her. Trans. at 8:10-14. Given the hostile nature of Mr. Maker's language, the threatening nature of his physical actions, and the fact that Mr. Maker shoved the gate open wide enough so that he could fit through it, Ms. Redman's concern constituted apprehension of imminent bodily harm, and her apprehension was reasonable under the circumstances. Based on all of the evidence, the government proved the elements in the second definition of assault beyond a reasonable doubt.

### MR. MAKER'S RULE 29 MOTION

Rule 29(a) requires a court to enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Marciano Magallon Jimenez, 219 F.3d 1109, 1112 (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). This test applies to both jury and bench trials. Id.

Mr. Maker argues that the government has not proven the that the charged offense was committed at a situs of federal jurisdiction. The relevant jurisdictional statute provides that in order for a federal court to exercise jurisdiction over the action, the offense must have occurred within "lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof . . . ." Volk v. United States, 57 F.Supp. 2d 888, 893 n.1 (N.D. Cal. 1999) (citing 18 U.S.C. § 7(3) and finding that the government proved that defendant committed the offense on federal land and that even if it had failed to establish that the Presidio falls within the jurisdiction of the United States, the Court would take judicial notice of that fact pursuant to Federal Rule of Evidence 201). See also United States v. Wilson, 535 F.2d 521, 523 (9th Cir. 1976) ("Federal jurisdiction was sufficiently established by letters of cession, a map, and oral testimony elicited from employees of the navy . . . .").

As part of the Golden Gate National Recreation Area, Fort Mason is administered by the National Park Service per 16 U.S.C. § 460bb-3(a). Mr. Maker argues that the government failed to establish jurisdiction because it failed to show the location of the incident through map, drawing, photograph, or other demonstrative means, and merely relied on Ms. Redman's layperson testimony and Officer Wu's arrest several yards away. In neither Volk nor Wilson, however, did the Court state that a specific type of proof – documentation of location, such as through maps – was required, nor did the Court hold that a layperson's testimony was not reliable to establish jurisdiction. Here, the fact that the witnesses credibly testified that the events took place at Fort Mason is sufficient evidence for the Court to conclude that the events did, in fact, take place at Fort Mason. Cf. United States v. Coutchavlis, 260 F.3d 1149, 1153-54 (9th Cir. 2001) (jurisdiction shown where witness testified that incident occurred somewhere between Glacier Point and the Chinquapin intersection, and an examination of a map of Yosemite demonstrates that the only route from Glacier point to that intersection traveled entirely within the boundaries of Yosemite National Park). Nor did Defendant contest that the dispute occurred at Fort Mason and that Fort Mason is federal land until after the hearing. As the Court observed in Volk, "the government may very well have felt compelled to introduce such evidence [maps] in [Krull v. United States, 240 F.2d 122 (5th Cir. 1957)] in light of the defendant's argument that the crime did not occur on federal land. Had defendant contested the

6

1  location of the offense in this case, the government would likely have born a heavier burden to prove
2  this element of the crime." Volk, 57 F.Supp. 2d at 893.

3  Ms. Redman testified that she was working the disabled entrance gate in the Great Meadow,
4  which is within Fort Mason. See Trans. at 3:19-20; see also Map of Fort Mason, www.nps.gov/
5  goga/planyourvisit/upload/map-foma.pdf.[1] Multiple individuals testified that the San Francisco
6  Blues Festival was located at Fort Mason. Id. at 18:5-6; 22:24-23:5; 23:4-5.  Mr. Maker did not
7  dispute that the Festival took place at Fort Mason or in the Golden Gate National Recreational Area,
8  nor did he claim that the Festival gates were accessible without entering the property of Fort Mason.
9  Id. at 23:6-7.  The government, therefore, has established that Mr. Maker committed the offense on
10 federal land beyond a reasonable doubt.

11  The government also argues that the Court has insufficient evidence to convict Mr. Maker
12 since the prosecution did not cross-examine him and his testimony is contradicted only by the
13 testimony of Ms. Redman.  It is within the province of the Court to judge the credibility of witnesses
14 and to resolve contradictions in the evidence.  United States v. Magallon-Jimenez, 219 F.3d 1109,
15 1114 (9th Cir. 2000).  As discussed above, the Court finds that the essential elements of the crime
16 have been proven beyond a reasonable doubt.  Id.  In particular, Ms. Redman's testimony was more
17 credible than Mr. Maker's for the following reasons: (1) very little time elapsed between the alleged
18 incident and detention of Mr. Maker, and several witnesses testified as to Mr. Maker's highly
19 agitated state while he was being detained for questioning; and (2) Ms. Redman's testimony was
20 detailed and internally consistent and the Court did not perceive that she had a motive to lie about
21 the incident.  For these reasons, the Court denies Mr. Maker's Rule 29 Motion.

22 ///
23 ///
24 ///
25 ///
26 ///
27

28 [1] The Court takes judicial notice of the fact that the Great Meadow is in Fort Mason pursuant to Federal Rule of Evidence 201.

**CONCLUSION**

Accordingly, Mr. Maker's motion for acquittal pursuant to Fed. R. Crim. P. 29 is DENIED. Maker is adjudged GUILTY on the count of assault. The Court will hold a status conference on to discuss sentencing on **August 26, 2008** at 10:30 a.m. in Courtroom E.

**IT IS SO ORDERED.**

Dated: August 13, 2008

ELIZABETH D. LAPORTE
United States Magistrate Judge